GREAT NORTHERN PACKAGING, INC v GENERAL TIRE AND
RUBBER COMPANY

Docket No. 78829. Submitted June 27, 1986, at Grand Rapids. Decided
October 6, 1986.

Defendant General Tire and Rubber Company issued a blanket
purchase order to plaintiff, Great Northern Packaging, Inc., for
the purchase of power gondolas. The order was issued on June
19, 1979, and expired July 31, 1980. In September, 1979,
General Tire began purchasing power gondolas from defendant
Colonial Packaging Corporation. General Tire ultimately pur-
chased 1,831 power gondola units from plaintiff and 5,478 units
from Colonial. Plaintiff brought an action against General Tire,
Colonial and others, alleging breach of contract by General
Tire and unjust enrichment. The claims against Colonial were
settled through mediation for $13,000. The claims against
General Tire were tried and the remaining claims against the
other defendants were dismissed. The Kent Circuit Court,
Woodrow A. Yared, J., granted a judgment on a jury verdict for
plaintiff and allowed a setoff of the $13,000 settlement with
Colonial. Plaintiff appealed and General Tire cross-appealed.

The Court of Appeals *held:*

1. The court did not err in ordering the setoff. An injured
party is entitled to only one recovery for a single injury. The
amount a plaintiff recovers from one defendant must be set off
against a subsequent verdict obtained against a codefendant. In
this case, the damages sought by plaintiff against General Tire
and against Colonial were identical.

2. The contract was not barred from enforcement by the
statute of frauds. The term "blanket order" in the contract was

REFERENCES

Am Jur 2d, Commercial Code §§ 9 *et seq.*
Am Jur 2d, Contracts §§ 355 *et seq.*
Am Jur 2d, Counterclaim, Recoupment, and Setoff §§ 30 *et seq.*
Am Jur 2d, Sales §§ 853 *et seq.*
Am Jur 2d, Torts §§ 17 *et seq.*
See the annotations in the Index to Annotations under Contracts;
Counterclaim and Setoff; Sale and Transfer of Property; Uniform
Commercial Code.

a quantity term sufficient to secure enforcement and allow parol evidence to clarify its meaning.

3. The measure of damages for the breach of a contract to purchase specialty items is the profit, including reasonable overhead, which the seller would have made from full performance by the buyer, together with any incidental damages allowed by the Uniform Commercial Code, due allowance for costs reasonably incurred and due credit for payments or proceeds of resale. The evidence on damages was sufficient.

Affirmed.

1. DAMAGES — SETOFF AND COUNTERCLAIM — TORTS.

An injured party is entitled to only one recovery for a single injury; the amount a plaintiff recovers from one defendant must be set off against a subsequent verdict obtained against a codefendant.

2. TORTS — INTERFERENCE WITH CONTRACTS — DAMAGES.

One who is liable to another for interference with a contract or prospective contractual relation is liable for damages for the pecuniary loss of the benefits of the contract or the prospective relation, consequential losses for which the interference is a legal cause, and emotional distress or actual harm to reputation, if they are reasonably to be expected to result from the interference.

3. CONTRACTS — DAMAGES — BREACH OF CONTRACT.

For the breach of a sales contract, the seller may recover the lost benefits of one contract, i.e., the lost profits, and incidental damages (MCL 440.2708; MSA 19.2708).

4. SALES — QUANTITY OF GOODS — UNIFORM COMMERCIAL CODE.

A written sales agreement subject to the Uniform Commercial Code must contain a term specifying the quantity of goods sold (MCL 440.2201; MSA 19.2201).

5. SALES — QUANTITY OF GOODS — PAROL EVIDENCE.

A quantity term appearing in a written sales agreement may be explained or supplemented by parol evidence (MCL 440.2202; MSA 19.2202).

6. SALES — QUANTITY OF GOODS — UNIFORM COMMERCIAL CODE.

The term "blanket order" in a contract to purchase goods is a sufficient quantity term to allow enforcement under the Uniform Commercial Code, and parol evidence may be used to help determine the meaning.

7. SALES — DAMAGES — SPECIALTY ITEMS — UNIFORM COMMERCIAL
     CODE.

  The measure of damages for the breach of a contract to purchase
  specialty items is the profit, including reasonable overhead,
  which the seller would have made from full performance by the
  buyer, together with any incidental damages allowed by the
  Uniform Commercial Code, due allowance for costs reasonably
  incurred and due credit for payments or proceeds of resale
  (MCL 440.2708[2]; MSA 19.2708[2]).

*Varnum, Riddering, Schmidt & Howlett* (by *Dennis C. Kolenda* and *Jeffrey L. Schad*), for plaintiff.

*Smith, Haughey, Rice & Roegge* (by *Lance R. Mather*), for defendant.

Before: R. B. BURNS, P.J., and R. M. MAHER and F. D. BROUILLETTE,* JJ.

R. B. BURNS, P.J. Plaintiff appeals, and defendant General Tire cross-appeals, from a judgment entered on a verdict rendered in favor of plaintiff for $112,000 following a jury trial. Against the verdict, the trial court allowed a setoff of $13,000, representing a prior settlement with Colonial. On appeal, plaintiff challenges the setoff and General Tire challenges the verdict.

Plaintiff is engaged in the business of designing, manufacturing and selling packaging materials and systems. In the fall of 1978, General Tire solicited proposals for a packaging system to transport fiberglass front-end assemblies manufactured by General Tire for Ford Motor Company. Plaintiff, through its Power Pak, Inc., division, submitted an oral proposal for a system called a "power gondola." Thereafter, several meetings were held, letters were sent to General Tire describing the system and setting out design revisions and, at one point, a prototype was submitted. The design

---

* Circuit judge, sitting on the Court of Appeals by assignment.

which was eventually used took approximately one year to develop.

General Tire decided to use the system and, on May 25, 1979, issued a purchase order for fifty units, at $64.76 per unit, for a trial run. Due to engineering changes, the unit price was raised to $81.62, which was reflected in a June 13, 1979, change order. On June 19, a second change order was issued, altering the quantity from fifty units to a "Blanket Order," with no expiration date. A third change order was issued on July 12, 1979, which set an expiration date of July 31, 1980.

In August of 1979, defendant Joseph Walsh, a salesman for plaintiff who had attended many of the meetings with General Tire, left his position with plaintiff and began working for a competitor, defendant Colonial. Almost immediately, Walsh contacted General Tire on behalf of Colonial Packaging and offered to sell to General Tire a virtually identical power gondola at a lower price. Evidence at trial indicates that Walsh had taken drawings and other documents with him regarding the power gondola when he left plaintiff's employ and turned them over to Colonial. Moreover, Colonial also received an actual power gondola from General Tire.

In September of 1979, General Tire began purchasing units from Colonial as well as from plaintiff. Ultimately, General Tire began using returnable racks supplied by Ford and no longer used the gondolas. By that time, General Tire had purchased 1,831 units from plaintiff and 5,478 units from Colonial.

In December, 1980, plaintiff filed a six-count complaint in circuit court. Two counts were later dismissed by stipulation. Plaintiff filed an amended four-count complaint. Count i alleged unfair competition against Colonial and its president, defen-

dant Kenneth Spencer. Count II alleged breach of contract by General Tire. Count III alleged tortious interference with contractual relations against Walsh, Spencer and Colonial. Finally, Count IV alleged unjust enrichment against Colonial and General Tire.

The case was submitted to mediation and, as a result, the claims against Colonial were resolved in the amount of $13,000. Thereafter, the claims against Spencer and Walsh were dismissed. The breach of contract and unjust enrichment claims against General Tire then proceeded to trial, resulting in the above-mentioned verdict.

On appeal, plaintiff argues that the trial court erred in allowing the $13,000 setoff against the verdict. We disagree. As a general rule, only one recovery for a single injury is allowed under Michigan law. The amount that a plaintiff recovers from one defendant is set off against a subsequent verdict obtained against a codefendant. *Stitt v Mahaney,* 403 Mich 711; 272 NW2d 526 (1978). See also *Hall v Citizens Ins Co of America,* 141 Mich App 676; 368 NW2d 250 (1985).

In *Stitt, supra,* a majority of the Michigan Supreme Court agreed with the opinion of dissenting Justice WILLIAMS as to the deductibility of an amount recovered from a codefendant. According to that opinion, however, in order to avoid double recovery and yet properly compensate the plaintiff, only the amount of the overlapping damages is set off; i.e., where recovery is had for an injury identical in nature, time and place, that recovery must be deducted from plaintiff's other award.

In *Stitt,* the plaintiff, who was riding a motorcycle at the time, was injured in an automobile accident. The plaintiff was taken to the hospital where he was negligently treated for his injuries. The plaintiff brought suit against the driver of the

automobile and against those responsible for his medical treatment. The plaintiff received a settlement on his claim against the driver. The issue before the Court was the deductibility of that settlement from the recovery obtained against the remaining defendants.

Justice WILLIAMS noted that, under Michigan law, the original tortfeasor (i.e., the driver) was liable and responsible for the damages resulting from two separate torts: the one caused by him in the initial tortious act (i.e., the accident), *and* the subsequent separate tort when the original injuries were negligently treated. The successive tortfeasors (those administering medical treatment) were liable only for the damages proximately caused by their own negligence. Justice WILLIAMS concluded that, to the extent the settlement represented recovery for the damages caused by the negligent medical treatment (the "overlapping" damages), the settlement was deductible from the amount recovered from the successive tortfeasors who administered medical care.

The issue regarding the deductibility of the amount of the deduction, if any, is a question of fact to be determined by the trier of fact.

Justice WILLIAMS stated:

> . . . If the jury finds one or more of these defendants were negligent and their negligence proximately caused injuries to plaintiff, there are two different means by which they might determine damages. If the jury can determine a separate amount of damages which would compensate plaintiff for the injuries attributable solely to the negligent acts of these defendants, it must then determine whether the $7,021.41 settlement with the original tortfeasor represented not only compensation for the original injuries, but also compensation in whole or in part for the subsequent

injuries. If the jury so finds, it must, before returning a verdict, deduct from any damages for which these defendants are found liable the portion of the original settlement which is found to compensate plaintiff for the subsequent injuries. If the jury finds that the amount of the original settlement compensated plaintiff solely for the original injuries and not the subsequent injuries caused by these defendants, it must return a verdict against these defendants for the total amount of damages due plaintiff for the injuries they caused.

On the other hand, if defendants are found liable to plaintiff but the jury is unable to specifically determine a separate amount of damages due as a result of defendants' separate negligence, it must determine a total amount of damages due as a result of the total injuries from both torts, and then must allocate the percentage of these total damages attributable to the injuries caused by the original tortfeasor and the percentage attributable to the injuries caused by these defendants. If the amount of the original settlement exceeds in the amount of money the percentage of total damages attributable solely to the original tort, the amount of the original settlement must be deducted from the total damages to arrive at the amount due plaintiff from defendants. If the amount of the original settlement does not exceed the percentage of the total damages allocated solely to injuries from the original tort, then the amount for which defendants are liable is their percentage of the total damages. [*Stitt, supra,* pp 737-738, n 13.]

*Stitt* is not on all fours with the case at bar. *Stitt* involved a setoff as between tortfeasors, while the case at bar involves the setoff of a mediation award on a contract claim. However, 4 Restatement Torts, 2d, § 774A(2), p 55 suggests that there should be a setoff between judgments for breach of contract and the tortious interference with the contract:

In an action for interference with a contract by inducing or causing a third person to break the contract with the other, the fact that the third person is liable for the breach does not affect the amount of damages awardable against the actor; but any damages in fact paid by the third person will reduce the damages actually recoverable on the judgment.

Comment "e" to that section further addresses the issue:

The fact that the plaintiff may have a cause of action against the person who has broken his contract does not prevent recovery against the defendant who has induced or otherwise caused the breach, or reduce the damages recoverable from him. The defendant and the contract breaker are both wrongdoers (compare § 875), and each is liable for the entire loss that he has caused. Even a judgment obtained by breach of the contract if it is not satisfied does not bar or reduce recovery from the one who has caused the breach. But since the damages recoverable from breach of the contract are common to the actions against both, any payments made by the one who breaks the contract or partial satisfaction of the judgment against him must be credited in favor of the defendant who has caused the breach.

Conversely, an action or judgment against the one who causes the breach without satisfaction will not bar or reduce recovery from the one who breaks the contract; but to the extent that there is duplication of the damages any payments made by the tortfeasor must be credited in favor of one who has broken the contract. [4 Restatement Torts, 2d, § 774A, comment e, pp 56-57.]

We conclude that, to the extent that the award against Colonial duplicates the award against General Tire, a setoff was appropriate. However, the

question of the existence of a duplication is not so easily settled.

An extensive comparison of the damage elements of the various claims is unnecessary. A comparison of the available damages for tortious interference with contract and for breach of contract reveals that partial duplication is theoretically possible. According to the Restatement, the elements of damages for tortious interference are:

> One who is liable to another for interference with a contract or prospective contractual relation is liable for damages for
> (a) the pecuniary loss of the benefits of the contract or the prospective relation;
> (b) consequential losses for which the interference is a legal cause; and
> (c) emotional distress or actual harm to reputation, if they are reasonably to be expected to result from the interference. [4 Restatement Torts, 2d, § 774A(1), pp 54-55.]

Similarly, in an action for a breach of a sales contract, the seller may recover the lost benefits of one contract (i.e., the lost profits) and incidental damages. MCL 440.2708; MSA 19.2708. Accordingly, there may be a partial overlap of damages.

However, we believe it is necessary to go beyond the theoretical damages and look at the actual damages sought and proved by plaintiff in the case at bar to determine the extent of the overlap of damages, if any. We begin by looking at the amended complaint. Under each of the four counts, plaintiff merely alleges that it was damaged in "an amount of at least $100,000."[1]

We now turn to the answers to interrogatories

---

[1] The unjust enrichment count alleged that General Tire and Colonial Packaging were unjustly enriched "in an amount of at least $100,000."

filed by plaintiff in response to interrogatories by General Tire and by Colonial. In its answers to General Tire's interrogatories, plaintiff stated that its damages consisted of various expenditures, $80,000 for lost business opportunities, and the amount of Colonial's profits. The items totaled more than $100,000. In answer to Colonial's interrogatories on damages, plaintiff gave an identical list of expenditures, again sought $80,000 for lost business, and lost profits.

Both the complaint and the interrogatories indicate that, for whatever reason, plaintiff chose only to pursue its economic damages of actual costs, lost business, and lost profits. More importantly, it is clear to us that plaintiff sought the same items of damages against Colonial as it did against General Tire.

Accordingly, under the facts of this case, we conclude that, while in theory there could be a partial, rather than complete, setoff, in reality there was a complete setoff as plaintiff sought the same damages on all claims. Therefore, the trial court correctly awarded a complete setoff.[2]

As to the cross-appeal and defendant's claim that plaintiff's breach of contract claim was barred by the statute of frauds, defendant argues that, since the contracts in this case were for a "blanket" order, no quantity term was stated in writing. Under MCL 440.2201; MSA 19.2201, the quantity term must be specifically stated. *Lorenz Supply Co v American Standard, Inc,* 419 Mich 610, 614-615; 358 NW2d 845 (1984).

However, in our opinion this case is analogous to *In re Frost Estate,* 130 Mich App 556; 344 NW2d

---

[2] We caution, however, that a different factual scenario could have indicated a partial setoff and thus have required a remand to determine which portion of the mediation award should have been set off against the jury award.

331 (1983). In *Frost,* there was a written sales agreement for the purchaser to take "all wood sawable." The Court construed the word "all" to constitute a quantity term. 130 Mich App 560. Citing MCL 440.2202; MSA 19.2202, the Court further stated that, once a quantity term is stated, parol evidence may be introduced to explain or supplement the term. *Id.* The Court later stated:

> Once a quantity term is found to exist in the agreement, the agreement need not fail because the quantity term is not precise. As § 2201(1) itself says: "A writing is not insufficient because it omits or incorrectly states a term agreed upon . . . ." As has been stated, the purpose of the required writing is to provide a basis for believing that oral evidence which is offered rests upon a real transaction. Once this purpose has been satisfied, *i.e.,* the requirements of § 2201 have been fulfilled, the question to be resolved is whether parol evidence may be admitted in order to make the agreement sufficiently definite to be enforceable. [130 Mich App 561.]

We conclude that the term "blanket order" expresses a quantity term, albeit an imprecise one. Parol evidence may be taken on what quantity is intended by that term. In the case at bar, there was conflicting evidence on whether the term "blanket order" meant that defendant would purchase all required units from plaintiff and, if so, how many units that would be. Accordingly, it was properly left for the jury to determine what quantity, if any, was stated by the "blanket order" language of the purchase orders.

Defendant's other argument on appeal is that the evidence on damages was insufficient and speculative, thus entitling it to a judgment notwithstanding the verdict. Where the goods in question in a breached sales contract represent specialty

items, the measure of damages is that provided for in MCL 440.2708(2); MSA 19.2708(2). *Detroit Power Screwdriver v Ladney,* 25 Mich App 478; 181 NW2d 828 (1970). There is no doubt that the power gondolas were specialty items. MCL 440.2708(2); MSA 19.2708(2) provides as follows:

> If the measure of damages provided in subsection (1) is inadequate to put the seller in as good a position as performance would have done then the measure of damages is the profit (including reasonable overhead) which the seller would have made from full performance by the buyer, together with any incidental damages provided in this article (section 2710), due allowance for costs reasonably incurred and due credit for payments or proceeds of resale.

Since it is known how many units were purchased from Colonial, 5,478, and Kowall testified with reasonable specificity as to the profit margin on each unit, the element of lost profits was sufficiently established. As for the recovery of start-up costs, there was specific testimony on the amount of such costs, being approximately $122,000. Plaintiff could recover that portion of the start-up costs which would have been recouped from the sale of the additional 5,478 units.

While it is not clear from the record how the start-up costs were to be amortized,[3] there was testimony that plaintiff would have recovered all of the start-up costs during the first eighteen months of production. Plaintiff sought recovery of only two-thirds of this amount, or approximately $80,000, since the written agreement with General Tire covered only twelve months of production.

---

[3] That is, what portion of the unit price went towards covering the start-up costs.

That is, there was specific testimony that, had General Tire honored its blanket order for the twelve-month period specified by the purchase order, plaintiff would have recovered two-thirds of its start-up costs, or approximately $80,000.

The trial court properly denied defendant's motion for a judgment notwithstanding the verdict.

Affirmed. No costs, neither side having prevailed in full.