52 F.3d 326
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
 John C. PEACOCK, Plaintiff-Appellant,
v.
LANDQUEST LIMITED, a Bahamian corporation, jointly and
severally; GR Group L.P., a Delaware limited partnership,
jointly and severally; Richard DeVos Sr., an individual,
jointly and severally; Daniel DeVos, an individual, jointly
and severally; Robert VanderWeide, an individual, jointly
and severally; and William Ockerlund, an individual,
jointly and severally, Defendants-Appellees.
 No. 94-1028.
 United States Court of Appeals, Sixth Circuit.
 April 10, 1995.
 
 Before: LIVELY, RYAN and DAUGHTREY, Circuit Judges.
 LIVELY, Circuit Judge.
 
 
 1
 This is a diversity action in which the parties agree the court should apply the substantive law of Michigan. Applying that law, the district court granted the defendants partial summary judgment. Following the court's denial of the plaintiff's motion for reconsideration, the parties stipulated to dismissal of the plaintiff's remaining claims, and the district court entered a final judgment of dismissal.
 
 I.
 A. Background
 
 2
 The plaintiff, John Peacock, is a real estate developer and broker. Early in 1988 he learned that a partially developed resort hotel complex located at Cape Eleuthera in the Bahamas was being sold. Convinced that purchase and further development of the property offered an unusual business opportunity, Peacock discussed the matter with Robert Schermer. The two men orally agreed to form a partnership, the "Thompson Partners," which would acquire and develop the resort.
 
 
 3
 Under this agreement, Peacock assumed responsibility for negotiating purchase of the property and "posturing" it for development, while Schermer was to locate and attract investors. In carrying out his duties, Schermer discussed investing in the project with the defendants Daniel and Richard DeVos and Robert VanderWeide.
 
 
 4
 In September 1988, Thompson Partners began negotiating with the Cape Eleuthera resort's owners. In November 1988, Peacock flew to the Bahamas to complete and sign a final option agreement. Several things prevented a final signing, however. First, Schermer unilaterally dissolved Thompson Partners. Second, the defendants announced on December 7, 1988, that they were backing this same project through a new entity called Landquest Ltd. Third, several days later Landquest Ltd. executed a purchase agreement that provided for a March 1990 closing. Finally, Schermer filed an action in Kent County Circuit Court, Michigan (the "state court action"), against Peacock seeking a declaration that their partnership was dissolved.
 
 
 5
 According to the defendants, prior to their purchase agreement through Landquest, Peacock went on a prolonged drinking binge that triggered a mental breakdown in which he exhibited paranoia, delusional thinking, and assaultive and violent behavior. This breakdown, the defendants aver, stemmed from a pre-existing manic-depressive illness. They explain that Peacock's difficulties led them to exclude Peacock from further Cape Eleuthera dealings. Peacock offers a different explanation: according to him, his discovery of the conspiracy to purchase the property without him triggered his breakdown.
 
 B. The State Court Action
 
 6
 Peacock filed a counterclaim against Schermer in the state court action concerning dissolution of Thompson Partners. Several months later, Peacock attempted to add Landquest as a defendant, alleging tortious interference with contract and conspiracy. Schermer successfully opposed this motion to amend, contending that the claims against Landquest arose out of subsequent transactions. In October 1990, Peacock again sought to add Landquest, as well as the individuals who are defendants in the present federal court action, as defendants in the state court action. Again the court denied the amendment, and in March 1991 the first state court trial ended with a hung jury.
 
 
 7
 In 1992, the state court action was retried. Peacock's Amended Counter-Complaint alleged that Schermer worked surreptitiously with Daniel DeVos and William Ockerlund to acquire the Cape Eleuthera property while excluding Peacock and that Schermer, DeVos and VanderWeide formed Landquest for this purpose. Landquest and GR Group ultimately purchased the property for $18 million. The amended counterclaim alleged that Schermer breached his oral partnership agreement with Peacock, and that Schermer diverted the partnership's business opportunities in the property to himself and the federal defendants. Peacock sought economic damages, as well as non-economic damages for mental anguish, humiliation and emotional distress. Schermer denied any conspiracy existed, and attempted to prove that the dissolution of his partnership with Peacock was due to Peacock's illness and unacceptable conduct. There was no dispute that Peacock received a finders fee for his efforts.
 
 
 8
 The case went to the jury on Peacock's theories of breach of contract and breach of fiduciary duty. The jury verdict, in the form of responses to special interrogatories, found that Peacock sustained pecuniary damages of $223,240 from Schermer's breach of the partnership agreement and breach of fiduciary duty. The state court entered an amended judgment on the verdict, and in September 1992 entered an order that the judgment had been satisfied.
 
 C. The Federal Action
 
 9
 Peacock filed the present action in November 1991. His complaint sought damages on theories of intentional interference with business relations and civil comspiracy. The defendants filed a motion for summary judgment. In its Opinion and Order, the district court ruled that Peacock's claim for economic damages was barred on two grounds by his previous recovery of lost profits in state court. Michigan law, the court explained, both prohibits a party from recovering twice for the same injury and embraces the defensive use of non-mutual collateral estoppel. The court therefore granted the defendants' motion for summary judgment as to the lost profits issue. As noted, Peacock then stipulated to dismissal of his claim for non-economic and consequential damages for mental anguish, humiliation and emotional distress. After entry of final judgment, Peacock appealed.
 
 
 10
 Because we believe the district court's first ground for denying recovery to Peacock correctly applied the Michigan Contribution Act and "single injury" rule, we will affirm on that basis without considering the alternative ground of defensive non-mutual collateral estoppel, which does not appear to have been as clearly defined by the Michigan courts.
 
 II.
 
 11
 Michigan follows a declaration in the Restatement of the Law that, generally, "the rendition of a judgment in an action against one of two or more persons liable for a tort, breach of contract, or other breach of duty, does not affect the claim against the other." Belin v. Jax Kar Wash No. 5, Inc., 95 Mich.App. 415, 420-21 (1980) (quoting Restatement of Judgments Sec. 94). In Belin, the plaintiff, who was injured in a traffic accident, sued both the owner of the van in which he was riding and the owner/operator of the vehicle that struck the van. The trial court directed a verdict for the owner of the van, and the jury brought in a verdict for the plaintiff against the owner/operator of the other vehicle.
 
 
 12
 On appeal by the plaintiff, the Michigan Court of Appeals reversed the directed verdict and the Michigan Supreme Court remanded the case for a new trial against the owner of the van in which the plaintiff was a passenger. That trial resulted in a verdict for the plaintiff that was larger than the verdict against the owner/operator of the other vehicle. The judgment entered on the earlier verdict remained unsatisfied. The owner of the van appealed, arguing that it was error for the court to permit the larger verdict at the later trial to stand. The Michigan Court of Appeals affirmed, reciting the language quoted earlier from the Restatement of Judgments.
 
 
 13
 The court reached a different result in Kaminski v. Newton, 176 Mich.App. 326 (1989). Kaminski was a medical malpractice action in which the plaintiff sued a doctor and a hospital. The jury awarded damages against the doctor, but returned a verdict of no cause of action with respect to the claim against the hospital. The doctor paid the judgment and the plaintiff filed a notice of satisfaction of judgment for the verdict, interest and costs. When the trial court overruled the plaintiff's motion for a new trial, he appealed from the judgment of no cause of action and denial of a new trial.
 
 
 14
 The court of appeals affirmed, finding that the plaintiff sought damages resulting from a single injury--the loss of a foot. The court stated that it made no difference that the alleged negligent acts of the doctor and the hospital were entirely distinct. Further recovery is barred, the court held, where the wrongdoings of two or more tortfeasors produce a single, indivisible injury.
 
 
 15
 The Kaminski court distinguished Belin on the ground that the first judgment in Belin had not been satisfied; thus, when the plaintiff obtained a verdict against the other joint tortfeasor (the owner of the van), it was not a "further" recovery. Rather it was the first and only recovery for the injury. If the first judgment in Belin had been satisfied, the second judgment would have been barred by virtue of a provision in Michigan's Contribution Act, Michigan Compiled Laws Annotated (M.C.L.A.) 600.2925c(5), which states:
 
 
 16
 The recovery of a judgment for an injury or wrongful death against 1 tortfeasor does not of itself discharge the other tort-feasors from liability for the injury or wrongful death unless the judgment is satisfied. Satisfaction of the judgment does not impair any right of contribution. (emphasis added)
 
 
 17
 The court also quoted Comment d to Restatement (Second) of Judgments Sec. 50:
 
 
 18
 [W]hen a judgment is based on actual litigation of the measure of a loss, and the judgment is thereafter paid in full, the injured party had no enforcible [sic] claim against any other obligor who is responsible for the same loss.
 
 
 19
 The Kaminski court cautioned that a second recovery is barred only when the acts of several tortfeasors produced a single indivisible injury. "Where the injuries are apportionable, satisfaction of the damages assessed by a jury against one tortfeasor would not necessarily amount to full compensation for all injuries suffered by the plaintiff." 176 Mich.App. at 332. In determining whether apportionment is appropriate, the court must conduct a factual inquiry to determine whether the plaintiff's injuries are "separable and can be allocated between the tortfeasors with reasonable certainty." Id.
 
 
 20
 In Great Northern Packaging, Inc. v. General Tire and Rubber Co., 154 Mich.App. 777 (1986), one defendant settled with the plaintiff after suit was filed, and the jury returned a verdict for the plaintiff against the non-settling defendant. The trial court held that the jury verdict was subject to a setoff for the amount of the settlement. Recognizing the single injury rule, the court affirmed the trial court's application of the setoff. The setoff covered only "overlapping damages"; that is, damages "for an injury identical in nature, time and place." Id. at 781. To determine whether a further award duplicates the first award of damages, it is necessary to look at the actual damages sought and proved by the plaintiff in a particular case, rather than theoretical damages sought. Id. at 785.
 
 III.
 A.
 
 21
 A comparison of the pleadings in the state court action with those in this federal action confirms beyond any doubt that the two lawsuits sought recovery for a single injury allegedly suffered by Peacock. That injury was his exclusion from the potential profits to be realized from the acquisition and further development of the Cape Eleuthera property. The statements of facts in the Amended Complaint in federal district court and in the First Amended Counter-Complaint in the state circuit court are virtually identical. In fact, many paragraphs in the two pleadings are the same, word-for-word. Although the defendants in the present case were not parties in the state court action, the gravamen of the claim in both cases was that Schermer conspired with Daniel and Richard DeVos, William Ockerlund and Robert VanderWeide to divert partnership opportunities away from Peacock as a partner in Thompson Partners and to acquire the Bahamas property for themselves.
 
 
 22
 The causes of action in the state court case were labeled "Breach of Contract" and "Breach of Fiduciary Duty." In the federal case the causes of action were labeled "Intentional Interference With Business Relations and Expectancy" and "Civil Conspiracy." In both cases, however, recovery depended upon Peacock's being able to prove that he suffered injury by reason of the joint, concerted actions of Schermer and the defendants in the federal action. The identical nature of the claims is nowhere better illustrated than in a comparison of the statements of causation and motive, and the prayers for relief in the two pleadings:
 
 The State Court
 
 23
 58. As a direct and proximate result of Schermer's breach of his fiduciary duties to Peacock, Peacock suffered economic damages as well as non-economic damages in the form of severe mental anguish, shock and emotional distress.
 
 
 24
 59. The actions of Schermer were malicious, wilful and wanton and demonstrated a reckless disregard of Peacock's right, inspiring in him feelings of humiliation, outrage, indignity, emotional distress and anguish, thus entitling him to exemplary damages.
 
 
 25
 WHEREFORE, Peacock respectfully requests this Court to enter a Judgment in his favor against Schermer, in an amount in excess of $50,000 and equal to the damages proved at trial, plus exemplary damages, interest, costs and attorneys fees. (Jt.App. 158-59)
 
 The Federal Court
 
 26
 74. As a direct and proximate result of Defendants' conspiracy to commit these wrongful acts, Peacock has suffered economic damages as well as non-economic damages in the form of severe mental anguish, shock, and emotional damage.
 
 
 27
 75. Defendants' conspiracy to commit wrongful acts was done maliciously, wilfully, and wantonly, and demonstrated a reckless disregard of Peacock's rights, inspiring in him feelings of humiliation, outrage, indignity, emotional distress and mental anguish, thus entitling him to exemplary damages.
 
 
 28
 WHEREFORE, Peacock respectfully requests this Court to enter a Judgment against each of the Defendants, jointly and severally, in an amount in excess of $50,000 and equal to the damages proved at trial, plus exemplary damages, interest, costs and attorneys fees. (Jt.App. 144-45)
 
 B.
 
 29
 An examination of the jury instructions given by the state court judge reveals that the jury was fully instructed on both the tort claim of breach of fiduciary duty and the breach of contract claim, as asserted in the two counts of the Amended Counter-Complaint. In addition to breach of contract, the judge defined breach of fiduciary duty and required proof of proximate causation. Furthermore, the court advised the jury that it could consider awarding exemplary damages, but only if it found that Schermer breached his fiduciary obligation to Peacock. These instructions referred to the tort claim.
 
 
 30
 Peacock prevailed on his state court counterclaim. Based on the evidence of Schermer's actions, taken in concert with the defendants named in this federal case, and the lengthy instructions, the state court jury found that Schermer breached his fiduciary duties owed to Peacock in addition to breaching the partnership agreement. The jury awarded damages to Peacock in the amount of $223,240 to compensate him "for the economic loss resulting from plaintiff's [Schermer's] wrongful actions" and found that Peacock was "not entitled to recover any exemplary damages or damages for any mental or emotional distress." (State Court Amended Judgment, Jt.App. 178-79)
 
 IV.
 
 31
 On appeal Peacock argues that the district court's joint tortfeasor analysis was "inappropriate" because Peacock did not obtain a tort recovery in his state court action. We disagree. Peacock clearly sought tort damages in the state circuit court, as shown by his pleadings. And the state court judge clearly instructed the jury on tort damages, requiring that they be the result of Schermer's breach of fiduciary duty. In addition, the state court judge instructed on exemplary damages, to be awarded only if the jury found a malicious breach of fiduciary duty. Finally, in answers to interrogatories, the jury specifically awarded compensatory damages for breach of fiduciary duty, a tort claim submitted to them separately from the breach of contract claim. Under the proof, the breach of fiduciary duty found by the jury could only have resulted from the joint wrongful acts of Schermer and the defendants in the federal court case.
 
 
 32
 In addition to reviewing the record, we have considered all of Peacock's arguments, and conclude they have no merit. Our examination of the record convinces us that Peacock proved in the state court that he suffered a single, indivisible injury at the hands of Schermer and the defendants in the federal court action. This injury is not separable or capable of allocation or apportionment among the wrongdoers. Although the federal court defendants were not parties in the state court, the jury in that trial heard a great deal of evidence that those persons acted in concert with Schermer to deprive Peacock of the economic benefits that he anticipated if Thompson Partners had acquired the Cape Eleuthera property. The verdict awarded compensation for that injury. Once the judgment on that verdict was satisfied, Peacock had no right to further recovery for that injury. M.C.L.A. 600.2925c(5) and Comment d to Restatement (Second) of Judgments Sec. 50; Kaminski, 176 Mich.App. at 328, 331.
 
 
 33
 The judgment of the district court is AFFIRMED.