*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

MSSC, INC.,

        Plaintiff/Counterdefendant-Appellee,

v

AIRBOSS FLEXIBLE PRODUCTS CO.,

        Defendant/Counterplaintiff-Appellant.

FOR PUBLICATION
July 29, 2021
9:00 a.m.

No. 354533
Oakland Circuit Court
LC No. 2020-179620-CB

Before: GADOLA, P.J., and JANSEN and O'BRIEN, JJ.

PER CURIAM.

Defendant/counterplaintiff challenges on appeal the trial court's denial of defendant's motion for summary disposition, and grant of plaintiff's motion for summary disposition. We affirm.

## I. BACKGROUND

This case arises from a contract dispute between plaintiff and defendant. Plaintiff is a "tier one" automotive supplier that supplies various Original Equipment Manufacturers (OEMs) with parts essential for a vehicle's suspension system. Defendant is a "tier two" automotive supplier that develops and manufactures rubber-based products for various industries, including the automotive industry. Before July 2013, plaintiff contracted with an OEM to supply suspension-related parts. In July 2013, plaintiff and defendant agreed that defendant would supply and assemble various component parts that plaintiff needed for its contract with the OEM.

The parties' agreement was memorialized in a purchase order, which was periodically amended to reflect agreed-upon changes to various terms, including pricing and delivery, with the most recent purchase order being issued in 2019. The purchase order was identified as a "BLANKET" purchase order, and stated:

> If this Purchase Order is identified as a "blanket" order, this order is valid and binding on seller for the lifetime of the program or until terminated pursuant to [plaintiff's] Terms and Conditions. A "blanket" order may be re-issued annually, but that does not change its binding effect for the lifetime of the program or until

-1-

terminated. Annual volume is an estimate based on the forecasts of [plaintiff's] customers and cannot be guaranteed.

The purchase order specified certain parts to be supplied by defendant and a unit price for those parts, but did not specify a quantity of parts to be supplied, instead stating that the "[a]nnual volume [required] is an estimate based on" the forecast of the OEM.

The purchase order also stated that plaintiff's "Terms and Conditions" applied, and those provided:

> 2. BLANKET ORDERS: If this order is identified as a "blanket order", [plaintiff] shall issue a "Vendor Release and Shipping Schedule" to [defendant] for specific part revisions, quantities and delivery dates for Products. [Plaintiff] shall have the right to cancel, adjust or reschedule the quantities of Products shown in such "Vendor Release and Shipping Schedule," except that it may not cancel, adjust or reschedule the Products shown as "Firm Obligations" on such "Vendor Release and Shipping Schedule."

In April 2019, defendant requested a modification of the pricing for two parts, which plaintiff agreed to on the condition that defendant sign an agreement to honor the terms of the purchase order, including all pricing terms. A few months later, defendant requested a price increase on additional parts. Plaintiff did not respond, and about two months later, defendant sent plaintiff another letter notifying plaintiff that it was "rejecting any releases for product to be delivered after March 31, 2020 unless [the parties] come to mutual agreement on revised pricing." In response, plaintiff stated that it did "not agree to the pricing increases" and expected defendant to "meet its contractual obligations to [plaintiff]." The following day, defendant notified plaintiff that it was formally terminating the parties' agreement and would stop supplying parts to plaintiff after the current order was filled.

Plaintiff filed suit against defendant, alleging that defendant breached the parties' agreement by refusing to manufacture, supply, and assemble parts unless plaintiff paid a substantial and not-bargained-for increase in the price of the parts. Plaintiff asked for either a declaratory judgment enforcing its rights under the purchase order or a judgment for specific performance to enforce the terms of the purchase order.

Defendant eventually moved for summary disposition in relevant part under MCR 2.116(C)(7) and (10), arguing that the purchase order was not an enforceable contract under Michigan's Uniform Commercial Code's (UCC), MCL 440.1101 *et seq*., statute of frauds because it failed to include a written quantity term and was not signed by defendant.

In response, plaintiff moved for summary disposition under MCR 2.116(I)(2), arguing that the purchase order was enforceable because its use of "blanket" was a quantity term sufficient to satisfy the statute of frauds.

Without a hearing, the trial court denied defendant's motion for summary disposition and granted plaintiff's motion for summary disposition, finding that the purchase order constituted an enforceable contract and defendant breached the contract when it demanded a price increase and

threatened to stop shipping parts in accordance with the parties' agreement. In rejecting defendant's argument that the purchase order did not contain a quantity term, the trial court relied on *Great Northern Packaging, Inc v Gen Tire and Rubber Co*, 154 Mich App 777; 399 NW2d 408 (1986), explaining that "like in *Great Northern*, the Court finds that the term "blanket order" does express a quantity term," and so the purchase order "does not violate the statute of frauds." As for defendant's lack-of-mutuality argument, the trial court reasoned that defendant's argument failed because there was no evidence that plaintiff acted in bad faith or in violation of the commercial standards of fair dealing.

This appeal followed.

## II. STANDARD OF REVIEW

This Court reviews de novo a trial court's decision regarding a motion for summary disposition. *Cadillac Rubber & Plastic, Inc v Tubular Metal Sys, LLC*, 331 Mich App 416, 421; 952 NW2d 576 (2020). Under MCR 2.116(C)(7), a party is entitled to summary disposition if "dismissal of the action . . . is appropriate because of . . . [the] statute of frauds . . . ." MCR 2.116(C)(7). When reviewing a motion for summary disposition under MCR 2.116(C)(7):

> [T]his Court must accept all well-pleaded factual allegations as true and construe them in favor of the plaintiff, unless other evidence contradicts them. If any affidavits, depositions, admissions, or other documentary evidence are submitted, the court must consider them to determine whether there is a genuine issue of material fact. If no facts are in dispute, and if reasonable minds could not differ regarding the legal effect of those facts, the question whether the claim is barred is an issue of law for the court. However, if a question of fact exists to the extent that factual development could provide a basis for recovery, dismissal is inappropriate. [*Dextrom v Wexford Co*, 287 Mich App 406, 428; 789 NW2d 211 (2010).]

MCR 2.116(C)(10) and (I)(2) test the factual sufficiency of a claim. *Pontiac Police & Fire Retiree Prefunded Group Health & Ins Trust Bd of Trustees v Pontiac No 2*, 309 Mich App 611, 617-618; 873 NW2d 783 (2015); *Cadillac Rubber & Plastics, Inc*, 331 Mich App at 421-422. When deciding a motion for summary disposition under MCR 2.116(C)(10) or (I)(2), this Court considers the pleadings, affidavits, depositions, admissions, and other documentary evidence submitted in a light most favorable to the nonmoving party. *Corley v Detroit Bd of Ed*, 470 Mich 274, 278; 681 NW2d 342 (2004); *Johnson v Vanderkooi*, 502 Mich 751, 761; 918 NW2d 785 (2018). Summary disposition should be granted when "there is no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law." *Cadillac Rubber & Plastics, Inc*, 331 Mich App at 422.

Questions of contract interpretation are reviewed de novo. *Burkhardt v Bailey*, 260 Mich App 636, 656; 680 NW2d 453 (2004).

## III. ANALYSIS

In general, Michigan's UCC applies to the sale of goods. MCL 440.2102. The UCC "is to be liberally construed and applied to promote its underlying purposes and policies." *Power*

*Press Sales Co v MSI Battle Creek Stamping*, 238 Mich App 173, 180; 604 NW2d 772 (1999).  In the absence of a directly controlling UCC provision, questions are resolved according to general legal principles, i.e., the law of contract interpretation.  *Conagra, Inc v Farmers State Bank*, 237 Mich App 109, 131-132; 602 NW2d 390 (1999); MCL 440.1103.  "The primary goal of contract interpretation is to honor the intent of the parties."  *Conagra, Inc*, 237 Mich App at 132.

## A.  QUANTITY TERM

Defendant first argues that the purchase order was an unenforceable contract because it failed to include any written quantity term as required by the statute of frauds.  We disagree.

A contract for the sale of goods requires that the contract specify a quantity.  MCL 440.2201, comment 1.  See also *Lorenz Supply Co v Am Standard, Inc*, 419 Mich 610, 614-615; 358 NW2d 845 (1984).  For a requirements contract, "the quantity term is not fixed at the time of contracting," and "[t]he parties agree that the quantity will be the buyer's needs or requirements of a specific commodity or service" over the life of the contract.  13 Corbin, Contracts (rev ed), § 6.5, p 240.  The UCC recognizes the validity of requirements contracts.  See MCL 440.2306(1).

On appeal, defendant challenges the trial court's conclusion that the purchase order's use of the term "blanket" expressed a quantity term sufficient to satisfy the statute of frauds.[1]  In *Great Northern*, 154 Mich App at 780, the defendant issued a purchase order for 50 units, then in June 1979, changed "the quantity from 50 units to 'Blanket Order' with no expiration date."  The defendant argued on appeal that "since the contracts in this case were for a 'blanket' order, no quantity term was stated in writing."  *Id*. at 786.  This Court rejected that argument, concluding that "that the term 'blanket order' expresses a quantity term, albeit an imprecise one," so parol evidence could be used to determine "what quantity is intended by that term."  *Id*. at 787.

Like in *Great Northern*, the use of "blanket order" in this case was intended as an imprecise quantity term.  The purchase order was identified as "BLANKET" and stated:

> If this Purchase Order is identified as a "blanket" order, this order is valid and binding on seller for the lifetime of the program or until terminated pursuant to [plaintiff's] Terms and Conditions.  A "blanket" order may be re-issued annually, but that does not change its binding effect for the lifetime of the program or until terminated.  Annual volume is an estimate based on the forecasts of [plaintiff's] customers and cannot be guaranteed.

The purchase order also incorporated plaintiff's terms and conditions, which provided:

> 2. BLANKET ORDERS:  If this order is identified as a "blanket order", [plaintiff] shall issue a "Vendor Release and Shipping Schedule" to [defendant] for specific part revisions, quantities and delivery dates for Products.  [Plaintiff] shall

---

[1] Defendant does not appear to contest that, if the trial court correctly held that "blanket" was a quantity term, then the parties had a requirements contract.  We therefore limit our analysis to whether the trial court correctly determined that the parties' contract contained a quantity term.

have the right to cancel, adjust or reschedule the quantities of Products shown in such "Vendor Release and Shipping Schedule," except that it may not cancel, adjust or reschedule the Products shown as "Firm Obligations" on such "Vendor Release and Shipping Schedule."

Taken together, these provisions demonstrate that "blanket" was intended to be a quantity term or a requirements contract. The contract did not state a specific quantity because plaintiff's need for parts was dependent on its customer's production schedule, which is common in the automotive industry. See *Cadillac Rubber & Plastics, Inc*, 331 Mich App at 427. While the precise quantity could not be readily determined, the contract "need not fail because the quantity term is not precise." *Johnson Controls, Inc v TRW Vehicle Safety Sys, Inc*, 491 F Supp2d 707, 713 (ED Mich, 2007) (quotation marks and citation omitted).[2] Accordingly, the trial court properly concluded that the use of "blanket order" was a quantity term sufficient to satisfy the statute of frauds.

Defendant also argues that the purchase order lacked mutuality of obligation. Comment 2 of MCL 440.2306 explains:

[A] contract for output or requirements is not too indefinite since it is held to mean the actual good faith output or requirements of the particular party. Nor does such a contract lack mutuality of obligation since, under this section, the party who will determine quantity is required to operate his plant or conduct his business in good faith and according to commercial standards of fair dealing in the trade so that his output or requirements will approximate a reasonably foreseeable figure. [MCL 440.2306, comment 2. See also *Cadillac Rubber & Plastics, Inc*, 331 Mich App at 426.]

As noted by the trial court, defendant does not argue, and the evidence does not suggest, that plaintiff acted in bad faith or in violation of commercial standards of fair dealing. To the contrary, the record indicates that plaintiff has purchased its requirement of parts from defendant for the past seven years without any claims of bad faith or unfair dealing. Plaintiff even agreed to the increase in price of two parts in April 2019 after defendant notified plaintiff of a pricing error. On this basis, defendant has not established a lack of mutuality of obligation.

B. SIGNATURE

Defendant next argues that the purchase order was unenforceable because it was not signed by defendant. We disagree.

A contract for the sale of goods for more than $1,000 is not enforceable unless there is a writing "signed by the party against whom enforcement is sought." MCL 440.2201(1). However, "[b]etween merchants, if within a reasonable time a writing in confirmation of the contract and sufficient against the sender is received and the party receiving it has reason to know its contents, it satisfies the requirements of subsection (1) against the party unless written notice of objection

---

[2] Although this Court is not bound by decisions of lower federal courts, such decisions may be persuasive. *Abela v Gen Motors Corp*, 469 Mich 603, 607; 677 NW2d 325 (2004).

to its contents is given within 10 days after it is received." MCL 440.2201(2). Comment 3 of MCL 440.2201 explains the effect of subsection (2):

> Between merchants, failure to answer a written confirmation of a contract within ten days of receipt is tantamount to a writing under subsection (2) and is sufficient against both parties under subsection (1). The only effect, however, is to take away from the party who fails to answer the defense of the Statute of Frauds[.] [MCL 440.2201, comment 3.]

MCL 440.2104(1) defines "merchant" as

> a person that deals in goods of the kind or otherwise by the person's occupation holds itself out as having knowledge or skill peculiar to the practices or goods involved in the transaction or to which that knowledge or skill may be attributed by the person's employment of an agent or broker or other intermediary who by the person's occupation holds itself out as having that knowledge or skill.

MCL 440.2104(3) defines "between merchants" as "any transaction with respect to which both parties are chargeable with the knowledge or skill of merchants."

Defendant holds itself out as a "manufacturer of high-quality proprietary rubber-based products for various industries, including automotive," as admitted in its answer to plaintiff's complaint. Plaintiff holds itself out as "a global leader in the manufacturing and supplying of automotive and off-road suspension systems," as stated in its complaint. The contract at issue concerned rubber-based parts used for automotive suspension systems. By their occupations, the parties hold themselves out as having knowledge peculiar to the goods involved in this contract. Accordingly, both plaintiff and defendant are merchants within the meaning of MCL 440.2104(1), and the contract was one "between merchants" within the meaning of MCL 440.2104(3).

As the at-issue contract was between merchants, MCL 440.2201(2) applied. Plaintiff delivered a written confirmation of the contract to defendant, and defendant received the contract and clearly knew of its contents but did not object within 10 days after receiving it. As a result, "the requirements of subsection (1)" are deemed satisfied. MCL 440.2201(2). The effect of this is that defendant cannot assert "the defense of the Statute of Frauds." MCL 440.2201, comment 3. Therefore, defendant's argument that the purchase order was not enforceable against defendant because it was not signed by defendant is without merit.

IV. CONCLUSION

Affirmed.

/s/ Michael F. Gadola
/s/ Kathleen Jansen
/s/ Colleen A. O'Brien

-6-