**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
**File Name: 09a0683n.06**

**No. 09-1033**

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

**FILED**

**Oct 14, 2009**

LEONARD GREEN, Clerk

COMPASS GROUP USA, INC., d.b.a. )
Chartwells, )
 )
     Plaintiff-Appellee, )
 )
v. )  ON APPEAL FROM THE UNITED
 )  STATES DISTRICT COURT FOR THE
EATON RAPIDS PUBLIC SCHOOLS, )  WESTERN DISTRICT OF MICHIGAN
 )
     Defendant-Appellant, )
 )
WAVERLY COMMUNITY SCHOOLS, )
 )
     Defendant. )

Before: SUTTON, KETHLEDGE and WHITE, Circuit Judges.

SUTTON, Circuit Judge. Eaton Rapids Public Schools appeals the district court's grant of summary judgment to Chartwells in this contract dispute. Because the record supports a single conclusion—that Eaton Rapids breached a binding non-compete clause—we affirm the judgment of the district court.

I.

In early 2002, Eaton Rapids published a Request For Proposal (RFP), soliciting bids for the operation of its food services. Chartwells won the bidding process, and on June 26, 2002, the Eaton Rapids school board authorized the superintendent to contract with Chartwells. The superintendent

and Chartwells executed an agreement that expressly "incorporated" all of the "terms and conditions within the [RFP]." R.85 Ex. 2 at 19. Three months later, on September 30, 2002, the superintendent signed a final agreement with Chartwells, that purported to be "the agreement" of the parties and to "supersede[]" any other arrangement. R.30 Ex. A at 13. The final agreement included a non-compete clause that provides: "Neither party shall during the term of this Agreement or for one year thereafter solicit to hire, hire or contract with either party's employees . . . ." *Id.* at 3. Should either party violate this clause, it adds, the breaching party would owe liquidated damages to the injured party "equal to the annual salary of the relevant employee." *Id.*

Eaton Rapids' superintendent renewed the one-year agreement with Chartwells four times, until Eaton Rapids decided to manage its food services operation in-house for the 2007–08 school year. In the spring of 2007, as Eaton Rapids was considering this change, it received several unsolicited resumes from food services professionals, including Linda Vainner, then Chartwells' director of dining services for the nearby Waverly and Williamston school districts. After several rounds of interviews, Eaton Rapids offered to hire Vainner as food services director, starting July 1, 2007. The school board authorized the hire on May 9, 2007, and Vainner notified Chartwells of her decision to accept Eaton Rapids' offer that day. She continued to work for Chartwells until June 28, 2007.

Chartwells sued Eaton Rapids, claiming that the school district breached the non-compete clause when it hired Vainner and committed several related torts. The district court granted summary judgment in favor of Eaton Rapids on the tort claims and in favor of Chartwells on the

contract claim. The court ordered Eaton Rapids to pay $61,243.53 in liquidated damages plus pre-judgment interest. Eaton Rapids, but not Chartwells, appealed.

II.

Eaton Rapids first contends that the district court lacked subject matter jurisdiction over this dispute. Chartwells, it says, did not satisfy the amount-in-controversy requirement, *see* 28 U.S.C. § 1332(a), because it "appear[s] to a legal certainty," *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 289 (1938), that Chartwells could not recover any more than $61,243.53—the liquidated damages authorized for breaching the non-compete clause. In determining whether Chartwells reached the $75,000 jurisdictional threshold, the school district acknowledges, we may aggregate its tort and contract claims. *See Klepper v. First Am. Bank*, 916 F.2d 337, 341 (6th Cir. 1990). But it maintains that this principle does not help Chartwells because Mich. Comp. Laws § 691.1407, which gives Michigan governmental entities immunity from tort liability, barred Chartwells' tort claims.

Courts assess the amount in controversy based on the face of the complaint, not the subsequent application of affirmative defenses, such as statutory governmental immunity. *See St. Paul*, 303 U.S. at 288–89; *Worthams v. Atlanta Life Ins. Co.*, 533 F.2d 994, 998 (6th Cir. 1976). Eaton Rapids may be right that the district court correctly rejected Chartwells' tort claims based on the Michigan immunity statute. But the ultimate success of that affirmative defense is just that—success on an affirmative defense—not a theory by which the value of the tort claims must be

ignored in determining the amount in controversy. The district court had subject matter jurisdiction over this diversity case.

III.

Eaton Rapids attacks the merits of the district court's contract ruling on two fronts: (1) Eaton Rapids did not breach the non-compete clause, and (2) the final agreement did not bind the school district. We give fresh review to the district court's summary judgment decision, drawing all reasonable factual inferences in Eaton Rapids' favor. *See Med. Mut. of Ohio v. k. Amalia Enters., Inc.*, 548 F.3d 383, 389 (6th Cir. 2008). And we will affirm the judgment if the record reveals "no genuine issue as to any material fact" and Chartwells "is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

A.

The court correctly determined that Eaton Rapids breached the non-compete clause as a matter of law. By any reasonable construction of the contract, Eaton Rapids "solicit[ed] to hire, hire[d] or contract[ed] with" a Chartwells employee "during the term of [the] Agreement or for one year thereafter." R.30 Ex. A at 3. Neither party disputes the following: on May 9, 2007, while Chartwells remained Eaton Rapids' food services provider, the school district offered to hire Vainner; Chartwells employed Vainner until June 28, 2007; and Vainner began working for Eaton Rapids on July 1, 2007. These facts alone demonstrate that Eaton Rapids breached the clause in at least three ways. *First*, Eaton Rapids "solicit[ed] to hire" Vainner by interviewing her and offering

her a job, all while she was still in Chartwells' employ. *Second*, Eaton Rapids "hire[d]" Vainner on May 9 when the school board approved Vainner's employment contract, Vainner accepted the position and she submitted her resignation to Chartwells. *Third*, Vainner's employment contract with Eaton Rapids was effective July 1, less than "one year" after the termination of the final agreement.

That Vainner was no longer a Chartwells employee when she started working for Eaton Rapids is beside the point. Eaton Rapids had already breached the clause months earlier when it "solicit[ed] to hire" a current Chartwells employee. Even if we accept that Eaton Rapids did not solicit Vainner's resume, it assuredly solicited her—"request[ed]" to hire her, *see Black's Law Dictionary* 1427 (8th ed. 2004)—when it offered her a job on May 9. And once Vainner accepted the offer, Eaton Rapids had "hire[d]" her. The ordinary use of "hire" refers to the offer and acceptance of employment, not the first day of work. Chartwells' alternative construction of the non-compete clause—which would exclude "former employees" like Vainner—would destroy the force of the clause unless the employee somehow worked simultaneously for both parties, an improbably narrow construction of a non-compete clause.

Because the RFP already obligated Chartwells to provide food services to the school district, Eaton Rapids adds, the final agreement amounted to an impermissible "modification of an existing contractual relationship," which lacked consideration because it was supported only by a "promise to perform that which [Chartwells] was already required to do." Eaton Rapids' Br. at 19 (quotation marks omitted). Yet the exchange of mutual promises constitutes consideration, *see Garlock v. Motz*

*Tire & Rubber Co.*, 159 N.W. 344, 346 (Mich. 1916), and the non-compete clause amounts to a mutual promise: Each party promised not to hire the other's employees. Chartwells, then, provided the requisite consideration—in the form of a promise not to hire Eaton Rapids personnel—to support the final agreement.

### B.

Eaton Rapids separately makes an *ultra vires* argument—that the superintendent had no authority to sign the final agreement and thus he could not bind the school district. The school district's legal premise is correct: An agent cannot bind its principal when it exceeds the limits of its authority. *See* Mich. Comp. Laws § 380.1201(1); *Mich. Paytel Joint Venture v. City of Detroit*, 287 F.3d 527, 539–40 (6th Cir. 2002). But its conclusion is not: On June 26, 2002, the board authorized "the superintendent . . . to enter into a contract with Chartwells Corporation to provide management services for the district's food service department . . . with an option to renew for up to four additional years, in strict accordance with their submitted proposal . . . ." R.85 Ex. 19 at 88. That is just what the superintendent did, all within his actual authority.

Not so, Eaton Rapids responds. The authorization extended only to the RFP, not to the final agreement. But the language of the authorization and Eaton Rapids' bylaws contradict the point. The board authorized the superintendent to sign "a contract," not "the RFP," not "the attached contract" and not any other similarly limited grant of authority. The board's qualification that the contract be "in strict accordance with [Chartwells'] submitted proposal," R.85 Ex.19 at 88, set a

baseline for the contract, but it did not prohibit filling in the details of the final agreement, as the steps from an RFP to a final contract necessarily require.

Eaton Rapids' bylaws confirm this conclusion. The superintendent, they say, is designated "the chief executive officer of the School District," Eaton Rapids' Appx. at 20, and has "the latitude to determine the best method of implementing the policies of the Board," *id.* at 21. The board approves the "broad purpose and function," *id.* at 20, of the district's programs, but the superintendent "administer[s]" the details, *id.* at 21. Eaton Rapids' June 26 contract authorization followed this approach: The board approved the parameters of the food service agreement and left it to the superintendent to sign "a contract" in accordance with them. That is just what the superintendent did, and the inclusion of a non-compete clause along with other standard contract provisions fell within these parameters. The superintendent did not exceed the scope of his authority.

The same is true of the four one-year extensions of the contract. Even if the school board did not independently authorize each extension, the superintendent did, and he had the discretion to do so. The board "authorized [the superintendent] to enter into a contract with Chartwells . . . with an option to renew for up to four additional years." R.85 Ex. 19 at 88. And, leaving no doubt about the point, the school board ratified the extensions by permitting Chartwells to continue to perform in reliance on the agreement. *See McLaughlin v. Bd. of Educ.*, 239 N.W. 374, 376 (Mich. 1939).

IV.

Eaton Rapids also challenges the damages award. Although it does not dispute the computation of the liquidated damages, it maintains that we should reduce or strike the award because (1) Chartwells failed to mitigate its damages, and (2) the award amounted to a "double recovery," Eaton Rapids' Br. at 52.

As Eaton Rapids sees it, Chartwells knew the school district intended to breach the non-compete clause and, instead of warning the superintendent, "[lay] in the weeds" and waited for the breach and the anticipated liquidated damages. *Id.* at 46. The common law of contracts, to be sure, imposes on injured parties a duty to mitigate the damages caused by a breach of contract. *See Harrington-Wiard Co. v. Blomstrom Mfg. Co.*, 131 N.W. 559, 564 (Mich. 1911). But this duty attaches only "when there has been a breach of contract," not before, and thus requires the injured party only "to diminish the damages," not affirmatively to prevent the breach itself. *Id.* Chartwells had no duty to do what Eaton Rapids should have done: prevent the contract from being breached. That Chartwells may have known of the breach in advance does nothing to reduce the damages owed. Section 2.3 of the final agreement gives no comfort for the school district either, as it concerns the termination of the contract upon breach, not the duty to prevent breach or the measure of damages upon breach.

The double-recovery argument fares no better. Waverly School District, which was a party to a similar contract, hired Vainner as its food services director soon after Eaton Rapids did, on the

understanding that Vainner would split her time between the districts. According to Eaton Rapids, Waverly has already settled its contract dispute with Chartwells out of court, to the tune of $30,000. Because Chartwells has already received this settlement, the school district argues, any recovery from this case greater than $31,243.53 would result in compensation greater than the liquidated damages benchmark.

To prevail on this point, however, Eaton Rapids must demonstrate that the two breaches caused a "single injury," *Great N. Packaging, Inc. v. Gen. Tire & Rubber Co.*, 399 N.W.2d 408, 410 (Mich. Ct. App. 1986), namely the loss of Vainner as an employee. Yet that possibility overlooks a key point: The clause protects Chartwells from more than just the loss of an employee. A vendor such as Chartwells has an interest in preventing trained employees from helping school districts operate their food service operations in-house, which results in the loss of both an employee and an account—and which is precisely what happened to Chartwells' Eaton Rapids and Waverly accounts. Here, although the underlying conduct was similar, Eaton Rapids and Waverly each breached a different contract and each triggered a distinct liquidated damages liability. The district court's judgment did not amount to an impermissible double recovery.

V.

For these reasons, we affirm.