DeVRIES DAIRY, LLC, Plaintiff

v.

WHITE EAGLE COOPERATIVE ASSOCIATION, et al., Defendants.

Case No. 3:09CV207.

United States District Court, N.D. Ohio, Western Division.

Signed June 2, 2014.

John N. MacKay, David W. Wicklund, Rebecca E. Shope, Shumaker, Loop & Kendrick, Toledo, OH, for Plaintiff.

Jared J. Lefevre, John M. Carey, Eastman & Smith, One SeaGate, Toledo, OH, John H. Vetne, New Portland, ME, Philip C. Graham, Sandberg Phoenix & von Gontard, St. Louis, MO, for Defendant White Eagle Cooperative Ass'n.

Philip C. Graham, Stephen M. Murphy, Sandberg Phoenix & von Gontard, St. Louis, MO, Richard M. Kerger, Kerger & Hartman, Toledo, OH, Carl J. Geraci, St. Louis, MO, for Defendants T.C. Jacoby & Dairy Support.

### ORDER

JAMES G. CARR, Senior District Judge.

This is a dispute over whether an agricultural cooperative properly compensated one of its member dairies for milk the dairy produced.

Plaintiff DeVries Dairy, LLC, alleges that defendant White Eagle Cooperative Association breached the parties' contract by not paying DeVries a fair and equitable premium for DeVries's milk. DeVries also contends that defendants T.C. Jacoby & Co. and Dairy Support, Inc., negligently misrepresented that White Eagle would not penalize DeVries for treating its cows with rBST, a bovine growth hormone, when, in fact, the opposite was true.

In a prior order, I determined DeVries was entitled to a jury trial on certain parts of its breach-of-contract claim, but granted summary judgment to White Eagle on the remainder of DeVries's claims. *De Vries Dairy, LLC v. White Eagle Coop. Ass'n,* 2011 WL 3349067 (N.D.Ohio).

Jurisdiction is proper under 28 U.S.C. § 1332(a)(2).[1]

Pending are the defendants' motions for partial summary judgment. (Docs. 147, 148).

For the following reasons, I deny White Eagle's motion and grant Jacoby and Dairy Support's motion in part.

### Background

In 2003, DeVries joined White Eagle, a dairy cooperative that markets and sells milk.

White Eagle hired Jacoby as the marketing agent responsible for selling the member dairies' milk, and Jacoby, in turn, hired Ron Brechler to act as the liaison between White Eagle and the member dairies. *DeVries, supra,* 2011 WL 3349067, *1.

Dairy Support is a wholly-owned subsidiary of Jacoby that provided administrative services to White Eagle.

Under the terms of the cooperative agreement, White Eagle sells its members' milk, pools the proceeds of those sales, and distributes the proceeds to the member dairies. To ensure that each member receives a fair and equitable price, White Eagle uses a model "designed to equalize the payments to individual producers, conform the payments to the federal marketing order minimum price and reflect the aggregate effect of the Co-op's marketing efforts." *Id.*

In 2007 and 2008, White Eagle reduced the premiums it paid for DeVries's milk, sometimes substantially. According to White Eagle, the reductions were warranted because DeVries refused to stop treating its cows with rBST—even after one of the cooperative's largest customers, Kroger, told White Eagle it would not accept milk from cows treated with rBST.

In the Fall of 2007, DeVries consulted with another dairy marketer, Dairy Farmers of America (DFA), about selling its milk to DFA.

When DeVries told White Eagle about the consultation, Brechler tried to discourage DeVries from associating with DFA. According to DeVries, Brechler said that DeVries could continue using rBST without financial penalty, and that White Eagle would make up for the lower premiums.

After White Eagle reduced DeVries's premiums in January, February, and March, 2008, DeVries withdrew from the cooperative. It then brought this suit against White Eagle, Jacoby, and Dairy

---

1. Plaintiff is an LLC whose sole member is a Dutch B.V. (for *besloten vennootschap,* a type of limited-liability entity), the owners of which are two Dutch citizens not lawfully admitted for permanent residence in the United States. (Doc. 167 at 1). Defendant White Eagle is an Indiana corporation with its principal place of business in that state (*id.* at 1–2; Doc. 167–2 at 1). The remaining defendants are Missouri corporations with their principal places of business in that state. (Doc. 49 at 2).

Support, raising, *inter alia,* claims for breach of contract and negligent misrepresentation.

On the parties' cross-motions for summary judgment, I held, as relevant here, that DeVries was entitled to a trial on its claim that White Eagle failed to pay a fair and equitable premium for DeVries's milk in 2008.

In particular, I noted that:

after DeVries tendered its notice of resignation from the Co-op, Jacoby sought authorization from the board of directors to treat DeVries "as a class of one" and, for the months of March and April, paid DeVries a premium well below that paid to any other member of the cooperative.

Jacoby's letter to the board states that while "other members came around and started to come off of rBST, DeVries did not," and blames DeVries for the loss of the Kroger business. Jacoby states that members' premiums would continue to reflect the costs and lost revenues "largely due to DeVries's reticence to listen to our recommendations [of going rBST free]." While other members would bear the "disproportionate share of such costs and lost revenues" for months to come, Jacoby stated that DeVries, by leaving, "will not shoulder his fair share."

The premium White Eagle paid DeVries for March and April was far lower than other members who continued to use rBST in their cows, even after DeVries had stopped using the hormone.

*DeVries, supra,* 2011 WL 3349067, *4.

However, I concluded White Eagle was entitled to summary judgment on DeVries's claim for negligent misrepresentation. *Id.,* *7–8.

The basis of that claim was Brechler's representation that DeVries could continue treating its cows with rBST without facing a financial penalty from the cooperative. According to DeVries, it relied, to its detriment, on those representations when electing to remain with White Eagle.

Given the undisputed facts, I concluded no jury could find that DeVries reasonably relied on that representation. First, the evidence showed that "[d]uring late 2007," when Brechler made the representations, "DeVries knew from multiple sources that rBST-laded milk could not be sold to several cooperatives and buyers of milk." *Id.,* *8. Second, I concluded that "DeVries' admitted doubts about Brechler's credibility undermine[d] its claim of justifiable reliance." *Id.*

### Discussion

A party is entitled to summary judgment on motion under Fed.R.Civ.P. 56 where the opposing party fails to show the existence of an essential element for which that party bears the burden of proof. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The movant must initially show the absence of a genuine issue of material fact. *Id.* at 323, 106 S.Ct. 2548.

Once the movant meets that initial burden, the burden shifts "to the nonmoving party [to] set forth specific facts showing there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Rule 56(e) "requires the nonmoving party to go beyond the [unverified] pleadings" and submit admissible evidence supporting its position. *Celotex, supra,* 477 U.S. at 324, 106 S.Ct. 2548.

In deciding a motion for summary judgment, I accept the non-movant's evidence as true and construe all evidence in the non-movant's favor. *Eastman Kodak Co. v. Image Tech. Servs., Inc.,* 504 U.S. 451,

456, 112 S.Ct. 2072, 119 L.Ed.2d 265 (1992).

### A. Negligent Misrepresentation

Jacoby and Dairy Support seek summary judgment on DeVries's negligent-misrepresentation claim against them. They argue that my ruling on the misrepresentation claim as to White Eagle is law of the case and, as such, entitles them to dismissal of the same claim, based on the same facts, alleged against them.

DeVries does not directly address the law-of-the-case issue. Instead, it argues there is a factual dispute as to whether it reasonably relied on Brechler's representations.

■ "Under the law-of-the-case doctrine, findings made at one point in the litigation become the law of the case for subsequent stages of that same litigation." *Rouse v. DaimlerChrysler Corp.*, 300 F.3d 711, 715 (6th Cir.2002).

■ The doctrine does not "deprive a court of the power to revisit an issue." *Kovacic v. Cuyahoga Cnty. Dep't of Children & Family Servs.*, 809 F.Supp.2d 754, 767 (N.D.Ohio 2011). It merely "expresses the practice of courts generally to refuse to reopen what has been decided ... A court has the power to revisit prior decisions ... in any circumstances, although as a rule courts should be loathe to do so in the absence of extraordinary circumstances." *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 816, 108 S.Ct. 2166, 100 L.Ed.2d 811 (1988).

My prior order conclusively resolved, against DeVries, the question whether a jury could find that its reliance on Brechler's representations was reasonable.

DeVries's opposition offers no compelling reason to depart from that ruling. *U.S. v. Moored,* 38 F.3d 1419, 1421 (6th Cir.1994). It merely advances DeVries's own view of the evidence.

Because the law-of-the-case rule bars DeVries from relitigating this issue, Jacoby and Dairy Support are entitled to summary judgment on the negligent-misrepresentation claim.

### B. Failure to Mitigate Damages

The primary issue left for trial is whether White Eagle breached its obligation to pay DeVries a fair and equitable premium for the milk DeVries produced in 2008.

In the first round of summary-judgment proceedings, White Eagle raised the affirmative defense of failure to mitigate damages. It argued that DeVries could have avoided some of its losses by: 1) halting its use of rBST; and 2) accepting White Eagle's offer to permit DeVries to withdraw from the cooperative without, as was otherwise required under the cooperative agreement, providing thirty days' notice, thereby enabling DeVries to sell its April milk through another entity.

DeVries responded that, even if it had accepted White Eagle's offer, it could not have located an alternative shipper in less than two weeks, and that rushing to do so would have "hindered its ability to negotiate a competitive premium." *DeVries, supra,* 2011 WL 3349067, *11.

I concluded there were "genuine issues of material fact with respect to how quickly DeVries could have found an alternative marketer," and thus a triable issue on whether "early termination would have in fact mitigated DeVries's damages." *Id.,* *11–12.

The defendants now renew the failure-to-mitigate issue.

For its part, White Eagle relies on evidence that emerged after my prior ruling.

According to White Eagle, this evidence establishes that DFA's offer to market DeVries's milk was "on the table" for several months before DeVries accepted that offer at the end of March, 2008. (Doc. 147 at 5). White Eagle therefore contends "[t]here was no obstacle to this alternative market for DeVries in March 2008[,"] and given DeVries's failure to act, DeVries should be barred from recovering damages associated with the milk it marketed through White Eagle in April. (*Id.*).

Jacoby and Dairy Support likewise contend DeVries's failure to accept DFA's offer earlier bars recovery for damages associated with the April milk.

But they also assert that "damages arising from any premium reduction resulting from [DeVries's] use of rBST are not recoverable[.]" (Doc. 148 at 15).

Jacoby and Dairy Support contend DeVries knew its continued use of rBST would lead to lower premiums, given that "(1) the market place *[sic]*, including Kroger, would require rBST-free milk in February 2008 and (2) [DeVries] would have to stop using rBST to market milk through DFA or Foremost." (*Id.*).

DeVries argues in opposition that "defendants misuse the [failure-to-mitigate] principle to attempt to insulate themselves from liability for their future misconduct that ha[d] not yet occurred or become known." (Doc. 157 at 11).

According to DeVries, its duty to mitigate damages did not arise until it learned that White Eagle had reduced its monthly premium. DeVries contends, for example, that it did not learn of the reduced premium for March milk until mid-April, when it received payment. DeVries argues that, by mid-April: 1) it was too late to mitigate damages associated with the reduced March premium; and 2) DeVries was already marketing its April milk through White Eagle.

■ "It is a cardinal rule of contracts that an injured party is under a duty to mitigate its damages and may not recover those damages which it could have reasonably avoided." *S & D Mech. Contractors, Inc. v. Enting Water Conditioning Sys., Inc.*, 71 Ohio App.3d 228, 238, 593 N.E.2d 354 (1991).

■ At the same time, "the obligation to mitigate does not require the party to incur extraordinary expense and risk." *Chicago Title Ins. Co. v. Huntington Nat'l Bank*, 87 Ohio St.3d 270, 276, 719 N.E.2d 955 (1999). "Ordinary and reasonable care, diligence and prudence are the measure of the duty." *S & D, supra*, 71 Ohio App.3d at 238, 593 N.E.2d 354.

Defendants' mitigation argument lacks a foundation in Ohio law.

■ Under Ohio law, a party's duty to mitigate damages does not arise until it knows a breach has actually occurred. *Baird v. Crop Prod. Servs., Inc.*, 2012–Ohio–4022, ¶ 37, 2012 WL 3815314 (Ohio App.) ("the duty to mitigate arises only where the non-breaching party has knowledge that he has actually sustained damages"); *Audiovox Corp. v. Schindler*, 2005–Ohio–2231, ¶ 31, 2005 WL 1060609 (Ohio App.) (rejecting argument that plaintiff should have, before breach occurred, mitigated losses by ceasing to deal with delinquent debtor and holding that, because "sales contract was not breached until [debtor] stopped making payments . . . [plaintiff] was under no duty to mitigate its damages until such time as it did when it ceased shipping goods to [debtor]"); *Car Wash Leasing, Inc. v. Ralph G. Consolo, Inc.*, 1977 WL 200397, *3 (Ohio App.) ("It is obvious that the duty to make reasonable efforts to mitigate does not be-

gin until the lessee is in default.").[2]

■ Here, DeVries alleges that White Eagle twice breached the contract by failing to pay appropriate premiums for its March and April milk. And it is undisputed that DeVries did not learn of those breaches—and thus was not in a position to mitigate—until mid-April and mid-May, after the respective breaches had occurred.

Accordingly, there is no merit to the argument that DeVries's failure to leave the cooperative earlier than it did—which would have precluded White Eagle from breaching the contract *vis-a-vis* the April milk—bars recovery for the damages associated with the April milk.

The same result obtains with respect to the argument that DeVries should have stopped treating its cows with rBST: the breaches did not occur until after DeVries had already treated its cows with rBST and sent the milk off to White Eagle. In addition, no contractual provision obligated DeVries to cease rBST treatments, and it is undisputed that other cooperative members used rBST (while incurring lower premium reductions than did DeVries).[3]

■ Finally, even if defendants' mitigation arguments were not misplaced, there is a genuine factual dispute as to whether DeVries acted reasonably in marketing its milk via White Eagle through April.

After receiving negative premiums in February and March, DeVries gave notice of its intent to withdraw from White Eagle, effective at the end of April. Although defendants cite evidence that DeVries had the option to do so much earlier, DeVries has competing evidence that one of defendants' agents told DeVries "there was going to be an improvement for March and April." (Doc. 157 at 12).

Viewed in the light most favorable to DeVries, this evidence and the record as a whole permit a finding that DeVries reasonably gave defendants a final chance to pay a fair premium, and left only after defendants refused to do so.

Accordingly, defendants are not entitled to summary judgment on their failure-to-mitigate defense.

### Conclusion

For the reasons set forth above, it is ORDERED THAT:

1. White Eagle's motion for partial summary judgment (Doc. 147) be, and the same hereby is, denied; and

2. Jacoby and Dairy Support's motion for partial summary judgment (Doc. 148) be, and the same hereby is, granted as to the negligent-misrep-

---

**2.** Although the parties have cited no Ohio cases addressing the precise mitigation argument defendants raise here, courts elsewhere have been quite skeptical of it. In *Ford Motor Credit Co. v. Hairston,* 2006 WL 2850615, *3 (W.D.Va.), the district court found that "[t]he deficiencies of this 'stop me before I breach contract again' defense are obvious," not least because "[i]t is a logical necessity that the injury . . . must occur before the duty to mitigate damages arises; the question of damages presupposes the discovery of the breach." Similarly, the court in *Maier v. AT & T Corp.,* 1996 WL 41237, *3 (N.D.Ill.), found "a certain amount of chutzpah" in the argument, which would create "a duty . . . on plaintiff's

part to mitigate damages before defendant breached the contract[.]" And in *Compass Grp. USA, Inc. v. Eaton Rapids Pub. Schs.,* 349 Fed.Appx. 33, 37 (6th Cir.2009), which arose under Michigan law, the Sixth Circuit concluded that the duty to mitigate "attaches only when there has been a breach of contract, not before, and thus requires the injured party only to diminish the damages, not affirmatively to prevent the breach itself."

**3.** Whether and to what extent White Eagle acted fairly and equitably in reducing DeVries's premiums based on rBST use is, of course, a question for the jury.

resentation claim and denied as to the affirmative defense of failure to mitigate damages.

So ordered.